202 So.2d 386 (1967)
Virgil Eugene LANGSTON
v.
The ST. CHARLES HOSPITAL et al.
No. 2689.
Court of Appeal of Louisiana, Fourth Circuit.
July 5, 1967.
Rehearing Denied October 4, 1967.
*387 Alcide J. Weysham, New Orleans, for plaintiff-appellant.
Hammett, Leake & Hammett, Robert E. Leake, Jr., New Orleans, Leon C. Vial, III, Hahnville, for American Universal Insurance Co., Dr. David Vial, Dr. Edward McCool, defendants-appellees.
Adams & Reese, Sam A. Le Blanc, III, New Orleans, for St. Charles Hospital and Argonaut-Southwest Insurance Co., defendants-appellees.
Before REGAN, YARRUT, and BARNETTE, JJ.
REGAN, Judge.
The plaintiff, Virgil Eugene Langston, filed this suit against the defendants, the St. Charles Hospital, Argonaut Southwest Insurance Company, Dr. Edward McCool, Dr. David Vial, and the American Universal Insurance Company, endeavoring to recover the sum of $197,487.20, representing damages for a personal injury which he asserts he incurred as a result of the negligence and malpractice of the defendants in failing to initially order an X-ray so as to skillfully treat a puncture type wound of his right leg.
The defendants answered and denied the foregoing accusations of negligence on the part of the defendant physicians.
In addition thereto, they explained therein that the plaintiff was at fault in that he failed to visit these physicians for additional treatment in conformity with their instructions and that the degree of care rendered to the plaintiff exemplified that skill ordinarily employed by the members of the defendant's profession in their community in treating the same or an analogous type of ailment or injury.
This case was consolidated with a similar suit arising out of the same accident in order to facilitate and expedite the trial thereof. The suit referred to is entitled Langston v. The St. Charles Hospital et al., La.App., 202 So.2d 390. In the Langston case, the plaintiff sued for the identical injuries under the identical theory of liability, the only difference being that Dr. McCool was not made a party defendant therein.
The case was tried in the lower court before a jury, which returned a verdict in favor of all of the defendants herein. From that judgment, the plaintiff has prosecuted this appeal.
The record discloses that on the morning of May 9, 1964, the plaintiff was engaged in mowing the lawn of his residence in Ama, Louisiana, when the blade of the power mower struck a strand of wire, and propelled a piece thereof into the lower *388 portion of his right leg. He was not aware, when the accident occurred, that the wire had actually penetrated his leg, and the only evidence of injury thereto was a puncture wound.
He was then driven to the St. Charles Hospital by his wife, where he was seen by the defendant, Dr. David Vial, who after examining and then cleaning the wound, probed for any foreign matter with a hemostat. Since there was no objective evidence to indicate the presence of anything foreign in the plaintiff's leg, Dr. Vial advised him to return home to rest. However, he instructed the plaintiff to contact him for additional treatment in the event that the pain did not lessen or in the event that his condition worsened. It was noted during this visit that his leg was oozing a clear fluid and a small amount of blood. No X-rays were taken of his leg and no antibiotics were prescribed by Dr. Vial on this occasion.
Later, in the evening of the same day, at approximately 8:45 P.M., the plaintiff returned to the hospital and complained of intense pain, the leg was swollen and the wound discharged pus. He was examined by Dr. McCool, also a defendant herein, who was jointly employed by Dr. Vial and by the St. Charles Hospital. He ordered a drug to alleviate the plaintiff's pain and in view of the swelling and other indications of infection, he prescribed an antibiotic and instructed him to return to his home, keep his leg elevated, and apply hot compresses in order to facilitate the draining of the wound. Dr. McCool asserted that he advised the plaintiff to return to see Dr. Vial in two days, or to return to the hospital in the event of some critical distress or other indication of an acute infection. He did not consider an X-ray of the leg advisable at this time.
The following day was Sunday, and the plaintiff remained in bed with his leg elevated so as to alleviate his discomfort. On Monday morning, he experienced more intense pain and his wife brought him to the West Jefferson General Hospital, where he was examined by Dr. L. J. Vallette. He found swelling of the leg, together with erythema extending from the ankle to the knee on the right front portion of the plaintiff's calf. An X-ray was taken which revealed the presence of a piece of metal at a point very near the right fibula.
Dr. Vallette prescribed that a course of antibiotics be taken for approximately twenty-four hours, thereafter he surgically removed a small piece of wire from the plaintiff's leg. He explained that an area of muscle tissue similar to the size of a baseball was excised together with the piece of metal. He also said that the wound contained a black, watery fluid rather than the normal type of pus associated with injuries of this nature.
Following the removal of the wire from the plaintiff's leg, little or no improvement was noticed. Consequently, Dr. Vallette consulted Dr. Harry Dascomb, a bacteriologist, who finally isolated and diagnosed the presence of an unusual type of bacteria which had entered the plaintiff's leg together with the more usual type thereof. Dr. Dascomb explained, in order to enlighten the jury, that the general antibiotic drugs administered to the plaintiff destroyed the more common bacteria; however, the dead bacteria served as a medium for the growth of the more unusual type thereof, which was unaffected by the antibiotics administered up to that time. He then recommended the use of a specific antibiotic, which eventually destroyed the unusual bacteria which were militating against the healing of the plaintiff's leg.
Subsequent to Dr. Vallette's treatment, the plaintiff was transferred to Charity Hospital in New Orleans, and from there to the United States Public Health Service Hospital where he received additional treatment. He eventually lost approximately five-sixths of the muscle of his right calf, and incurred a condition commonly known as a "drop-foot", in which the missing musculature impedes the process of dorsiflexion.
*389 In short, he sustained a permanent disability and as a result thereof, he will suffer a severe limp for the remainder of his wife.
On the appeal hereof, the plaintiff's counsel has posed two problems for our solution. Initially he contends that the lower court erred in consolidating both cases for trial, that is, his suit against Dr. Vial and his suit against Dr. McCool. In addition thereto, he also insists that the defendant doctors were at fault when they neglected to take X-rays of the plaintiff's leg when he sought treatment in the St. Charles Hospital on the morning and in the evening of May 9, 1964.
With respect to the lower court's action in consolidating both cases for trial, it should be pointed out that one suit was filed against all of the defendants herein, while the other was filed against all of the defendants except Dr. McCool. The controlling statutory provision is Article 1561 of the Code of Civil Procedure, which reads:
"When two or more separate suits involving a common issue of law or fact are pending in the same court, the court at any time prior to trial, may order the consolidation of the suits for trial or may order a joint trial of any of the common issues."
A cursory reading of this article simply reveals that it is within the absolute discretion of the lower court to consolidate two or more separate suits which involve a common issue of law or fact. In this case, the petitions disclose that the claims are identical, involve with one exception the same parties, and encompass identical issues of law and fact, namely the negligence vel non of the defendants in diagnosing and treating the plaintiff's injury.
The more serious question posed for our consideration is whether the two physicians who attended the plaintiff on the day of his injury were at fault when they neglected to order an X-ray of his leg.
The unanimous opinion of all of the medical experts who appeared herein to assist the court, including Dr. Dascomb and Dr. Oscar Creech, then professor of Surgery at Tulane University Medical School, and now the Dean thereof, was to the effect that an X-ray was uncalled for when the initial examination was made or when a subsequent examination occurred twelve hours later. They all also agreed that the proper course of treatment at the time of the initial examination was a conservative one, since not all puncture wounds involving the presence of a foreign body become infected and consequently require surgery. The experts explained that the difficulty involved in locating the presence of a foreign body often necessitates the damaging of a great quantity of otherwise normal tissue, so that the usual course of treatment is to endeavor to avoid infection in order to eliminate the necessity for surgical removal of the foreign matter.
The evidence adduced herein discloses that only after the occurrence of an infection does a necessity arise for determining the presence or location of any foreign matter. The normal procedure, according to the experts, is to treat such a wound with antibiotics for approximately twenty-four hours, even after an infection is discovered and then remove the foreign body only after the antibiotics have in effect localized the area of infection. In this way, spreading of the infection is minimized. It was, therefore, the conclusion of the experts that even if an X-ray had been taken on the day that the plaintiff incurred his injury, no other course of treatment would have been followed than that prescribed by both doctors Vial and McCool. The rare combination of bacteria was, it appeared, the real cause of the extensive damage to the plaintiff's leg, and this bacteria would not, of course, have been discovered through the medium of an X-ray.
The rationale of the existing jurisprudence only exacts of physicians, surgeons, and other medical practitioners *390 that degree of skill and care which is usually possessed and exercised by members of their profession in their respective communities. They are obligated to use reasonable care and diligence along with their best judgment in the application of their skill to the patient's ailment.[1] Of course, it is incumbent upon the physician, surgeon, or other medical practitioner who becomes a defendant in a malpractice case to prove with that certainty required by law that he is possessed of the necessary degree of skill and competence and that in applying that skill to the patient he exercised reasonable care and diligence together with his best judgment.[2]
The whole tenor of the record leads us to the inevitable conclusion that the defendants have proven that they possess the necessary degree of skill and competence prevailing in the community or the area in which they practice, and they applied that skill to the plaintiff's ailment with reasonable care and diligence, along with their best judgment.
To reiterate, only for the purpose of emphasis, the expert evidence adduced herein convinces us that the real cause of the extensive damage to the plaintiff's leg was the unusual variety of bacteria introduced therein by the entry of the wire. It is quite obvious, as we said hereinabove, that this bacteria would not have been discovered if an X-ray had been initially taken by either Dr. Vial or Dr. McCool. It was only after an examination and experimentation by an expert bacteriologist that the unusual nature of the plaintiff's infection was discovered. Even if the piece of wire had been discovered on the day of the accident, good medical practice dictates that it should remain in the leg until some form of infection is manifested, and only then will surgery be indicated.
The foregoing elucidation, in our opinion, clearly reveals that the jury was correct in its finding that the defendants were not guilty of any negligence or malpractice in connection with their treatment of the plaintiff; therefore, the judgment predicated upon its verdict is correct.
For the foregoing reasons, the judgment of the lower court is affirmed. The plaintiff is to pay all costs incurred herein.
Affirmed.
NOTES
[1] See Meyer v. St. Paul-Mercury Indemnity Co., 225 La. 618, 73 So.2d 781 (1953).
[2] Ibid.